Good morning. May it please the Court, my name is Charles Quinn of Graham Curtin in Morristown, New Jersey, and I represent the plaintiff-appellant PB Brands LLC, which I will refer to as Patel Brothers. I would like to reserve two minutes for rebuttal, please. Thank you. Before addressing the similarity issue and other issues, I'd like to start by pointing out that there's no basis in law or fact for the district court's determination that the Patel is a common Indian surname. It is a common Indian surname, we admit that, but what counts here for purposes of determining the strength of the Patel marks is that the Patel marks are well known in the market where they're used and advertised, and that's the market for Indian groceries and food products. What do we have, what evidence was produced at the preliminary injunction hearing to support the need for an injunction in this case? We have, our mark is a strong mark in the field of Indian groceries and food products. We clearly have similarity between Patel brands. What's the likelihood of confusion showing that was made at the district court? The likelihood of confusion obviously turns on an analysis of the ten lap factors, and we established that I believe that there's clearly a similarity between the two marks. The district court determined otherwise based on the differences between Brothers and Shah. Well, let's say you have Smith Brothers, and then you have Smith Thompson Grocery. It's not, to me, it's not obvious that you're going to have confusion. Don't you need some evidence? Yes, and we had, we presented strong evidence of the preeminence of the Patel marks in the Indian grocery field where virtually no one else uses the name Patel. On top of that, we demonstrated that Patel is the first and the dominant name of the Patel marks that consumers would like. You demonstrated that. Are you talking about the advertising figures? Advertising, sales. This case really isn't much different from the other cases we cited where prominent, well-known marks were found to be similar to infringing marks, such as the Hewlett-Packard case where you have Packard Technologies and Hewlett-Packard, such as the the tie case where you have Beanie Babies and Beanie Co. case where you have Vouv Royale and Vouv Clicquot. Chris, you have a different area here. You have the store, the Patel Shah, in a location where you really don't have any store, any Patel Brothers stores or... Well, I respectfully disagree with that, Your Honor. The test is whether Patel's reputation was known in Fairfield, Essex County, New Jersey. All right, do we have proof of that? Clearly, we blanketed, we had strong evidence that we blanketed northern New Jersey and New York with advertising, both print and TV, in Pakistani... Does that get you there? I mean, usually in these situations you have some proof that the similarity... I mean, sometimes it can be obvious, but here to me it is not obvious and it seems that you should need something else that wasn't brought forward and that while you may be entitled to an injunction after trial, preliminarily the showing of irreparable harm based upon a likelihood of confusion, it doesn't appear obvious to me. Patel Brothers versus Patel Shah. Patel is the dominant name in both marks. Although you didn't register Patel, you registered... Patel Brothers, right. But Brothers, as it but tell, it's of no trademark significance. I mean, you're arguing that to me, but I'm just telling you it's not it's not obvious to me. Let me go back to Judge Rendell's hypothetical, which at least I didn't understand your answer. She gave you a hypothetical. Suppose Smith Brothers was a company and then there was Smith and Thompson came into the same field. It's obvious that Thompson is not one of the Smith Brothers. Isn't it obvious where you have a common name like Smith and a new name in the picture that we're talking about a different entity? Well, yes, Thompson is different from Smith Brothers, or Smith-Thompson is different from Smith Brothers. The same way that Nina Vittori and John Stetson is different from the other Stetson. Surname marks are entitled to the full protection of the trademark clause in its relevant market. If a newcomer can come along with the same surname and just add another name to it, then surname marks will become worthless pretty quick. So, I think you have to analyze this case, as in all trademark cases, you have to look at the strength of the mark. You have to look at the market. You have to look what consumers are going to think. Consumers are going to think that Patel-Shaw is just an extension of the Patel Brothers family of marks. Wait a minute. Wait a minute. Let's go back. Let's undertake what you just said we should undertake and tell me, you say Patel Brothers dominates the market. Now, on what is that based? Patel Brothers has 32 stores in 16 states. That is, you address it as though we're talking about a national market because you don't have evidence with respect to these particular counties. But you say we have national advertising, we're dominant in the market, but you only have two stores, an average of two stores a state, if we're talking in terms of national market, and your advertising budget is something like a half a million dollars over the last five years or something like that. 600,000. No, $600,000 a year right now. Bear in mind. That's not particularly, you know, that doesn't dominate, doesn't sound like dominating a national market like Allstate or something. Bear in mind that the national market is for the Indian grocery store services market. Patel Brothers is located in every neighborhood, for want of another word, where there are large populations of Indian and Pakistani citizens and residents. We don't have evidence of that. We don't have someone on the stand who has said we are the, we are everywhere, there are more than 20,000 Indian people. I mean, you claim it has secondary meaning, you say this, but I'm asking for the evidence. We've presented evidence, and as I understand it, the way to prove secondary meaning is through sales, is through advertising, is through deference of others to the trademark rights of the owners, through customer testimonials. We presented evidence on all this. Maybe it's not as much as you would have liked, but in the context of a preliminary injunction hearing, we don't have time to go out and, you know, get a hundred after David's. If you don't have to ask for a preliminary injunction, you can wait and ask for it after you've got some evidence of people being confused in that market. Your Honor, you know as well as I do that proof of actual confusion is hard to come by in the first place, and it certainly is not necessary for a preliminary injunction. There's a long line of cases in this circuit and others to that effect. I agree. I'm just the secondary meaning aspect is just not as clear to me. But I'm only one of three. I guess I suppose I shouldn't be that horse to death beyond what I've already said. I think the district court also erred with regard to customer sophistication, and it shouldn't not have because Patel-Shaw didn't dispute that groceries are necessities, which are frequently bought and are relatively inexpensive. Instead, the district court on its own determined that this factor was an equipoise because families purportedly spend 13.7 percent on groceries. As we pointed out, that was based on a misreading of the Bureau of Labor Statistics report. Actually, it's 7 percent, and the other 6 percent is for dining out. What about the disclaimer? The disclaimer, Your Honor, was presented at the hearing. If you look at it, I didn't notice it. Neither did plaintiff's counsel the first time they noticed it. I don't see how there was no proof whatsoever that it would be effective, and that's clearly required in this circuit and particularly in the Second Circuit and implicitly in this circuit. So I think the district court clearly erred in relying on the disclaimer. More than that, Patel-Shaw hasn't built up any equity in its name. We started this suit the day it opened its business, so I don't think a disclaimer would be effective in any event, nor is there any proof or evidence that the disclaimer was used more than once in this one leaflet. No evidence that it's used on the store sign, on receipts, and so on and so forth. So I see no basis for giving any credence. I, for one, agree with you that the disclaimer should not have been considered under these circumstances, and I also agree with you that the district court erred with respect to its finding and analysis of sophistication of the customers. Thank you. But the question is where do I go from there in my analysis? Even accepting those two errors, do you think that there is any question about how the judge's weighing process would come out if we sent it back? My guess is no. I wanted to point out, back on the strength of the mark, the district court recognized implicitly, maybe not explicitly, that the Patel Brothers' marks are strong in the field of Indian groceries. It decided, unfortunately, to discount that evidence in light of the fact that 131 corporate registrations have been filed over the last 30 years in New Jersey, which contain the name Patel. Now, the law is crystal clear that that sort of evidence is not accepted or given any weight in the absence of proof of actual use by the listed or the registered trademark owners or, in this case, corporate owners. And the reason for that is, absent proof, there's no way to tell that the public has been conditioned to draw distinctions between multiple marks. Here, there was no proof that any of these other marks or registrations were in business, and more importantly, that they were in the business of selling Indian groceries under the name Patel. And, in fact, we demonstrated that they weren't. So I think that is clearly an error. I think it's also clearly an error in the district court. Does Victoria's Secret suggest that the registration, while it may not be the strongest evidence you could come up with, is nevertheless something to be considered? I don't think Victoria's Secret said that. I think Victoria's Secret says you have to consider proof of other uses. And just a registration in the State Department or in the Department of State or down in the trademark office is not proof of use. If it was enough just to come in with a list of trademarks, very few trademarks would be upheld because you can always Google it. You can go to the patent and trademark office. You can always find a lot of similar marks. So I think that's clearly an error. I think it's clearly an error, as I mentioned before, that the district court – I see that I'm red. Finish up. I just wanted to emphasize that we do compete in the same area. We do compete for the same customers. The district court recognized that Patel Shah's customers have our – receive our advertising, both print and television. Patel brothers' marks were well known in northern New Jersey. As McCarthy says, given that our reputation was already established, the day Patel Shah opened the door, likely confusion existed. Thank you. We'll hear from you on ribbon. Good morning, Your Honors. May it please the Court, my name is Vanessa Elliott. I'm here for the defendant, Apelli Patel Shah, Indian Groceries, also known as Sheba Corp. The district court properly found that there is no likelihood of confusion because the marks at issue are not confusingly similar and because plaintiff's marks are weak. There was no abuse of discretion, error of law, or clear mistake in considering the proofs presented. Plaintiff, which according to Wikipedia translates as farmer, is the second most common name in Indian culture. Shah, which means king of kings or emperor, is the third most common name. Because of the obvious differences in these names and the abundant use of the name Patel, Patel Shah Indian Groceries does not indicate to consumers the same source as Patel Brothers or Patel's Cash and Carry. The ordinary consumer of Indian Groceries is not likely to assume a common source for these two grocery store businesses. Did they have to prove that? Did they have to produce ordinary citizens to say what they would think? I mean, it's hard for me. I mean, I can only analogize it to, you know, a Smith Brothers and Smith Thompson. But yet, I don't know. I don't frequent Indian grocery stores. Maybe it would be obvious that Patel Brothers is just everybody knows it. It's like Target is to, you know, other shoppers. Do they need to produce actual evidence of people being confused? I mean, isn't that what the likelihood test is all about, that you don't need to produce someone, you can just figure it out from the nature of the name? Your Honor, I would say that normally if the names are so strikingly similar that it appears obvious on its face that someone would be confused, then no, there's no need to produce actual evidence of confusion or evidence of actual confusion. In this case, the names are not so strikingly similar. In fact, they're strikingly different. And in that case, because it is something of a niche market to the average American, you know, it is within the Indian culture, it would have been extremely helpful to the court if they could have disabused the court of the notion that it was that the names are different by showing Indian people or, you know, Indian grocery store customers who were honestly confused by these two names. My client's experience has been that people are not confused by these names. And I think that's supported by the common sense reaction when you know that Patel is the second most common name in a culture that has literally millions and millions and millions of people in it. So the name Patel is abundant in the Indian culture. There are Patel everythings. There are Patel lawyers and doctors and liquor stores and grocery stores. And when you see the name Patel and it's modified by another name such as Shah, which in fact is a name in and of itself, Patel Shah is sometimes people's surname, so that it becomes like John versus Johnston. You know, you could see it that way. But the fact is, to answer your Honor's question, when it strikes the ear as so different, the plaintiff should come in with some evidence of something else. And what the plaintiff has done in this case is they're so confident in their position that they really didn't present any evidence to the court to support any of the elements of the lap factors. They just came in and said this is wrong, we're right, and they're wrong, and the judge disagreed with them, and still no evidence was presented. I assume the proceedings in the district court have gone no further? Have they proceeded on their complaint? No, Your Honor, they have gone no further. In fact, the plaintiff at the oral argument, which is in the record, argued to the judge that the two factors, the two lap factors that were important in this case were just the similarity of the names and the strength of the mark. And they essentially relied on that argument. They didn't argue the other lap factors. So if the district court below perhaps took notice of some things on its own in analyzing the other lap factors, it was simply because it had no evidence from the parties on the other factors. So it was really left to its own devices. And usually it would make a discussion of the point and say that the parties had not presented evidence, so the issue was an equipoise and didn't really rely on a factor where no evidence was presented such as the sophistication of the consumer. This action was filed the day or the day after the store announced its opening, the Tell Shaw store, am I correct? That's the allegation. I believe that the dates do match that. How long after that date, approximately, was the hearing on the preliminary injunction? The hearing was on November 29th of 2007, so it was filed in September. I believe the motion was filed in October, and counsel can correct me if I'm wrong, and then the hearing was in November. They didn't ask for temporary restraint, which was somewhat unusual. The other thing to point out is the plaintiff puts into their papers that they licensed their name to other parties, which would indicate that perhaps there is no irreparable harm to them. Now, if it does go back to the district court, it should go back with an instruction to determine whether there's really any irreparable harm because if the plaintiff is licensing its name to other parties and not attaching any restrictions to that license, you know, it's just here, use my name for $10,000 a year, then obviously there's no irreparable harm to the plaintiff. It could be compensated by the defendant through a license, and so that would mitigate against a preliminary injunction being issued. Although with a license, you probably have some say over how it's used, some control. One might assume, but we don't know. I'm saying we don't know the answer to that question, so if it does go back to the court, then that question should be answered. This court has held that a district court may focus primarily on the similarity of the name when the goods are directly competing, and indeed plaintiff's counsel has argued that those were the two most important factors was the similarity of goods and the strength of its mark. And the district court's determination is a factual determination that's within its discretion to have its own gut reaction to the similarity, to the way the names are placed together and the overall impression. And plaintiff's counsel argues very strenuously that the district court should have looked at the similarities of the name and should have ignored, essentially, or should have overlooked the dissimilarities. And the judge made a very thorough analysis and really looked and discussed in his opinion, his very well-thought-out opinion, that he was looking at the overall impression, how it struck the ear, and that's a factual determination that shouldn't be disturbed by this court. So there'd be clear error standard with respect to the likelihood of the similarity and the likelihood of confusion? Yes, Your Honor. And as for the cases that are cited by the plaintiff's counsel, I believe those cases really support our position in that the court should look at each set of facts on its own, that there isn't one case that can apply to another and give them a legal conclusion of win or lose. Unless my client's name was Patel Brothers, which it's not, then there is no legal case. This is really a factual question that the district court had the discretion to decide. The important point that the district court looked at when looking at the secondary meaning of this name and the advertising, he asked the plaintiff's counsel at oral argument, what is your evidence of secondary meaning? And counsel's response was advertising. And all of the advertising materials that were submitted related to Patel Brothers, and then he had some testimonials that were reported on the internet, and they all again related to Patel Brothers. And Patel Brothers is the name that they are seeking to protect. It's the name that they have the right to protect, and my client is not using Patel Brothers. I have nothing further. The reason for the question I asked you about how long between the filing and the hearing really went to Judge Rendell's question as to whether witnesses were required to come in and say they were confused. Now, should this matter go back, then there might be witnesses who say they have been confused in view of the fact that the store, I take it, is operating since that time. Is that correct? I suppose it's theoretically possible witnesses can say things that are surprising. I think it would be surprising if witnesses were brought in to say that they were honestly confused by these names. It's not... It wouldn't be the ultimate decision... basis for a decision. It's only one factor, so we have ten factors to look at. And if names are inherently different or convincingly different to the district court, and then there's a witness or two that come in and say, well, I was confused, it's up to the district court to determine the credibility of that witness and to factor all ten that factors. And I think, you know, to be fair to the district court, what he tried to do was to certainly avoid only analyzing two of the factors that were really argued before him and to look at all ten factors and say, you know, had evidence been presented to me, these are the things that I would have considered and this is how I see it. And he gave a good hard look at the overall impression. Thank you. Thank you. Your Honor, the way we... Excuse me, Your Honors. The way we analyze the similarity of the marks is the way courts have been analyzing the similarity of marks in this circuit and elsewhere. We looked at the mark overall. We didn't look just at Brothers and Shaw. And if you look at the marks overall, it's clear that Patel is preeminent, or excuse me, is preeminent in this market, but Patel is also the dominant aspect of the Patel marks. Now, consistent with authority which we've cited, a junior user cannot take the senior co-op, the senior user's dominant mark, and add another name or descriptive material to it. That's what Patel-Shaw has done here. But he didn't do Patel-Brothers-Shaw. No, the dominant aspect of the Patel-Brothers marks is Patel. It's not Brothers, it's not Cash and Carry, it's not Market, it's Patel. And that's what the cases teach us. The similarity... It sounds to me, if you call yourself Patel-Brothers, that you're talking about an entity that is composed of Brothers. Brothers clearly indicates that the company was founded by two brothers and they stand behind it. But Brothers modifies Patel. Patel is what's going to stick in the consumer's mind. The consumer is not going to think of Patel-Brothers as Brothers, or Cash and Carry, they're going to think of it as Patel. But here we have a different entity that is Patel-Shaw. So it's obvious that one part of it is not a Patel-Brother. I understand that, Your Honor. But given the strength of the Patel marks, where nobody else uses it, the name Patel in Indian grocery store services, it's highly likely that the consumer is going to think that Patel-Shaw is just an extension of the Patel-Brothers marks or is affiliated with Patel-Brothers or is sponsored by Patel-Brothers. That's the test. And I think we established that in the light of the rubric that this court and other courts have laid down. I don't think that there's any need to present evidence with regard to Indian culture and so on and so forth. The Indian people are living here in the United States. Patel-Brothers is here in the United States. We're entitled to the same protections of the trademark laws as anybody else is, whether it's an English language or an Indian language thing. I see my red light is on. Thank you very much. Unless you have a question. Thank you. Have a nice weekend. Thank you, counsel. Same to you. We'll call our last case for the morning, which is United States.